```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/23/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
    :
In re: CELSIUS NETWORK LLC, et al.,    :
    :
                 Debtors,    :
    :
------------------------------------------------------------------- X
    :
JASON VOELKER,    :
    :
                 Appellant,    :    24-cv-4057 (LJL)
    -v-    :
    :    MEMORANDUM AND
MOHSIN Y. MEGHJI, as Litigation Administrator, et al.    :    ORDER
    :
                 Appellees.    :
------------------------------------------------------------------- X

LEWIS J. LIMAN, United States District Judge:

Jason Voelker ("Voelker"), appearing as a shareholder of iCapital Management Inc. ("iCapital"), appeals the May 8, 2024, Memorandum Opinion and Order of the Bankruptcy Court denying his motion for leave to file an adversary proceeding. Dkt. No. 1. Mohsin Y. Meghi, as litigation administrator of the post-effective date Debtors, and Ionic Digital Inc. move to dismiss the appeal. Dkt. No. 23.

For the following reasons, the motion to dismiss is granted and the appeal is dismissed.

## BACKGROUND

Debtors[1] operated a cryptocurrency platform called Celsius which allowed retail users to transfer cryptocurrency to Celsius, earn rewards on those transferred assets, and take out loans from Celsius against the cryptocurrency they transferred to the platform. Dkt. No. 23 ¶ 1.

---

[1] Debtors are Celsius Network LLC, Celsius KeyFi LLC, Celsius Lending LLC, Celsius Mining

On July 13, 2022, Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Southern District of New York. *See In re Celsius Network LLC et al.* ("*Bankruptcy Proceeding*"), 22-10964-mg (Bankr. S.D.N.Y.). Voelker is a shareholder of iCapital, which was a creditor in Debtors' bankruptcy. On August 15, 2022, iCapital filed a proof of claim based on its allegation that Celsius held assets in trust for it. Voelker himself did not file a proof of claim in the chapter 11 cases. On November 9, 2023, the Bankruptcy Court entered a confirmation order confirming Debtors' plan of reorganization (the "Confirmation Order"). The Plan, among other things, provides for the (i) distribution of Celsius's liquid cryptocurrency assets to its users and other creditors; (ii) creation of a new company, Ionic Digital Inc., that would reorganize Celsius's Bitcoin mining business and distribute equity of that company to Celsius's creditors, and (iii) pursuit and monetization of litigation claims, Causes of Action, and certain illiquid assets, and distribution of related proceeds to creditors under the oversight of litigation administrators and the Litigation Oversight Committee. Dkt. No. 4289 ("Plan"), *Bankruptcy Proceeding*. iCapital was deemed to be holding an Account Holder Claim. With respect to such claims, the Plan effectuated a Class Claim Settlement which provided that Account Holders who did not opt out of the Class Claims Settlement would receive, "in lieu of any scheduled Claim or Filed Proof of Claim, an Allowed Claim in an amount that is 105% of the scheduled amount of such Claim." Dkt. No. 23 at 9; Plan § IV.B.8. The Plan provided that proofs of claim filed by holders of Account Holder Claims that did not opt out of the Class Claims Settlement would be "expunged from the Claims Register and shall be of no further force and effect." Plan § IV.B.8. It also contained an

---

LLC; Celsius Network Inc., Celsius Network Limited, Celsius Networks Lending LLC, Celsius US Holding LLC, GK8 UK Limited, and GK8 USA LLC. Dkt. No. 23 at 1 n.1.

injunction provision that enjoined "the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any Causes of Action released pursuant to th[e] Plan, including the Causes of Action released or exculpated in the Plan." *Id.* pt. F.  It provided that holders of allowed claims, by being eligible to accept a distribution pursuant to the Plan, would be deemed to have consented to the injunction.  *Id.*  The Confirmation Order became final and non-appealable on November 23, 2023.  The Plan became effective on January 31, 2024.  Pursuant to the Plan and Confirmation Order, the Post-Effective Debtors have expunged the iCapital Claim "in exchange for release full and final satisfaction of its claims against the Debtors, including the 5% premium to its scheduled claim as part of the Class Claims Settlement."  Dkt. No. 23 ¶ 23.

On April 21, 2024, Voelker, purportedly on behalf of iCapital, moved for leave to file a late adversary proceeding against the Post-Effective Date Debtors for the return of certain cryptocurrency assets allegedly belonging to iCapital.  In his proposed adversary complaint, Voelker asserted that iCapital entrusted certain cryptocurrency assets pursuant to a pledge agreement and that Celsius violated its obligations to iCapital and recklessly endangered its assets.  The proposed adversary complaint sought the return of iCapital's pledged digital assets, which Voelker alleged were mistakenly transferred to the Celsius bankruptcy estate.

On May 8, 2024, the Bankruptcy Court, per the Honorable Martin Glenn, issued a Memorandum Opinion and Order denying Voelker's motion to file the adversary complaint. Dkt. No. 4873, *Bankruptcy Proceeding*.  Judge Glenn concluded that iCapital (and therefore Voelker) was enjoined from initiating the proposed adversary proceeding, that Voelker lacked standing to bring the proceeding, and that the alternative relief that Voelker sought, an order of nondischargeability and limited relief from discharge for iCapital to pursue the immediate return

of the pledged digital assets, could not be granted because the iCapital Claim had already been fully addressed and resolved under the Plan. *Id.* at 21–26.

Voelker argues on appeal that because iCapital's digital assets were held in bailment, they were not property of the bankruptcy estate and were not subject to the jurisdiction of the bankruptcy court. Dkt. No. 14 at 3–4. For the same reason, he argues that the assets were not subject to the injunction under the Plan. *Id.* at 5–6; Dkt. No. 24 at 8–9. Appellees argue that the Court should dismiss the appeal under the doctrine of equitable mootness. Dkt. No. 23 at 16–23. In the alternative, Appellees argue that the Court should affirm the order of the bankruptcy court on the grounds that Voelker lacks standing and that the bankruptcy court correctly denied the motion for leave. *Id.* at 24–31.[2]

## DISCUSSION

Two other judges of this Court have dismissed appeals arising from the Celsius bankruptcy as equitably moot. *See In re Celsius Network LLC*, 2025 WL 902459, at *3 (S.D.N.Y. Mar. 25, 2025); *In re Celsius Network LLC*, 2024 WL 3376496 (S.D.N.Y. July 11, 2024). The Court agrees with the analysis in those decisions.

---

[2] Voelker filed the notice of appeal in this case on May 28, 2024. Dkt. No. 1. After Voelker filed his opening brief on September 5, 2024, the appeal was dismissed for failure to pay the filing fee. Dkt. Nos. 14–15. Voelker moved to vacate the dismissal of the appeal and for leave to proceed in forma pauperis, which the Court granted. Dkt. Nos. 16–19. Voelker then moved for an emergency stay of a separate bankruptcy court forfeiture order of March 27, 2025, that he argued would affect the assets at issue here. Dkt. No. 21. The Court denied the motion and set a briefing schedule on the original appeal. Dkt. No. 22. Appellees filed their motion to dismiss and response brief on May 1, 2025. Dkt. No. 23. Appellant filed a reply brief on June 30, 2025. Dkt. No. 24. Appellees filed a reply to the motion to dismiss on June 12, 2025. Dkt. No. 25. On June 13, 2025, Voelker filed an emergency motion for an expedited ruling in this case or a stay of a bankruptcy court forfeiture order effective June 30, 2025, that he alleges will affect the assets at issue. Dkt. No. 26. Appellees opposed the motion. Dkt. No. 27. Given that the Court has in fact ruled on the merits of the appeal prior to June 30, 2025, which is the primary relief Voelker seeks in the motion for emergency relief, *see* Dkt. No. 26 at 21, the motion for emergency relief is denied as moot. The Court expresses no opinion on the merits of the motion.

District courts have jurisdiction over appeals from the bankruptcy courts pursuant to 28 U.S.C. § 158(a). Section 158(a)(1) confers jurisdiction on the "district courts of the United States . . . to hear appeals (1) from final judgments, orders, and decrees" of the bankruptcy court.

"Equitable mootness is a prudential doctrine under which a district court may in its discretion dismiss a bankruptcy appeal 'when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" *In re BGI, Inc.*, 772 F.3d 102, 107 (2d Cir. 2014) (quoting *In re Charter Commc'ns, Inc.,* 691 F.3d 476, 481 (2d Cir. 2012)). In the Second Circuit, a bankruptcy appeal is presumed equitably moot when the debtor's reorganization plan has been substantially consummated. *In re Charter Commc'ns.,* 691 F.3d at 482. "Substantial consummation," as defined by section 1101(2) of the Bankruptcy Code, requires "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan"; and, finally, "(C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

The presumption of equitable mootness created by a plan's substantial consummation can be overcome by an objector, however, if each of the five factors set forth by the Second Circuit in *In re Chateaugay Corp.*, 10 F.3d 944 (2d Cir.1993) ("*Chateaugay II*"), are satisfied. Those factors are:

[1] the court can still order some effective relief;

[2] such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;

[3] such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;

[4] the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and

5

> [5] the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Id.* at 952–53 (internal quotation marks, citations, and alteration omitted). It is the appellant's burden to show that all five of the *Chateaugay* factors are satisfied. *See BGI*, 772 F.3d at 108, 110; s*ee also In re Clean Air Car Service & Parking Branch Two, LLC*, 2025 WL 1409862, at *3 n.4 (2d Cir. May 15, 2025) (summary order) (applying *Chateaugay* factors and dismissing appeal as equitably moot).

It is clear that the Plan has been substantially consummated. *See In re Celsius Network*, 2024 WL 3376496, at *3 (holding that the Plan was substantially consummated by July of 2024). The Confirmation Order was entered on November 9, 2023, and the Plan became effective on January 31, 2024, over one year ago. As of August 26, 2024, the Post-Effective Date Debtors had distributed $2.53 billion worth of liquid cryptocurrency and cash in initial distributions, representing approximately 94% of the value of eligible cryptocurrency distributions and 93% of total value eligible for distributions. Dkt. No. 7637 ¶ 12, *Bankruptcy Proceeding*. As of March 21, 2025, the Post-Effective Date Debtors have made multiple rounds of distributions to creditors and 98% of cryptocurrency claims have been distributed. Dkt. No. 8068, Ex A, at 1, *Bankruptcy Proceeding*. The appeal is presumed to be equitably moot. *See BGI*, 772 F.3d at 108.

Appellant has not met his burden of showing that the *Chateaugay* factors are satisfied. "A chief consideration under *Chateaugay II* is whether the appellant sought a stay of confirmation." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005); *see Matter of MPM Silicones, L.L.C.*, 874 F.3d 787, 805 (2d Cir. 2017). Appellant here did not. iCapital filed a claim and did not object to the Plan or the Class Claim Settlement stating that the claim would be expunged in exchange for 105% of the scheduled amount. Neither iCapital nor Voelker sought to stay this outcome, and Voelker did not seek to file an adversary proceeding

until months after the Plan became effective. iCapital has already received a distribution pursuant to the plan. Dkt. No. 4873 at 16, *Bankruptcy Proceeding*. The failure to seek a stay renders the requested relief inequitable, as iCapital (or Voelker) cannot benefit from other creditors' agreement to have their claims expunged while seeking to have its own claims reinstated. *See In re Metromedia Fiber Network*., 416 F.3d at 145 ("In the absence of any request for a stay, the question is not solely whether we *can* provide relief without unraveling the Plan, but also whether we *should* provide such relief in light of fairness concerns."); *BGI*, 772 F.3d at 10 (dismissing appeal for lack of diligence when appellants "did not appear at the Plan confirmation hearing, filed no objections to the Plan, and neither appealed the Confirmation Order nor sought a stay of the Plan's effective date").[3]

In addition, permitting Voelker to commence litigation on claims that were released, discharged, and enjoined would upset the underpinnings of the chapter 11 bankruptcy. Dkt. No. 4873 at 2, *Bankruptcy Proceeding*. Appellant's requested relief would unravel the Class Claim Settlement, a crucial part of the Plan. Distributions were calculated based on the scheduled claims held by participants in the settlement. Almost all of those distributions have already been made. Voelker now seeks to change the amount owed to iCapital and effectively opt out of the Class Claim Settlement. A determination in his favor "cannot be applied only to Appellant" but would need to be applied to "all similarly situated borrowers and would require clawing back, reallocating and redistributing" the amounts distributed under the Plan. *In re Celsius Network*,

---

[3] Appellant argues that he diligently filed a motion for an emergency stay of a bankruptcy court forfeiture deadline on March 31, 2025. Dkt. No. 24 at 9. However, as explained in the Court's order denying such stay, "[t]he forfeiture order only concerned claims of creditors who have never opened a support ticket to redeem their distributions, and iCapital has opened such a ticket." Dkt. No. 22 (citing Dkt. Nos. 7983, 8057, *Bankruptcy Proceeding*). The order Appellant needed to stay was the much earlier Confirmation Order, which provided that iCapital's claim would be expunged in exchange for 105% of the scheduled claim.

2024 WL 3376496, at *3. This "would amount to imposing a different plan of reorganization on the parties." *In re Metromedia Fiber Network*, 416 F.3d at 145 (quoting *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1049 (7th Cir.1993)).

Voelker objects that "equitable mootness cannot shield orders tainted by jurisdictional defects." Dkt. No. 24 at 9. He also argues that the injunction ordered by the Plan does not apply to iCapital's claim to assets held in bailment, because such assets were not property of the bankruptcy estate. Dkt. No. 14 at 5. He states that the bankruptcy court erred by holding that iCapital and Voelker are enjoined by the Confirmation Order "irrespective of whether there is validity" to the contention that the iCapital assets were held in bailment. Dkt. No. 24 at 10 (quoting Dkt. No. 4873 at 23, *Bankruptcy Proceeding*).

However, Voelker is not able to escape the force of the Plan by arguing that the iCapital assets were held in bailment. iCapital's claim in bankruptcy, filed on August 15, 2022, stated that it was based on cryptocurrency "assets held in trust by Celsius for iCapital management." Dkt. No. 4873 at 21–22, *Bankruptcy Proceeding*. This is the exact claim Voelker seeks to press now, which iCapital understood was based on assets held in trust. iCapital nevertheless did not opt out of the Class Claim Settlement, thereby agreeing to the expungement of the claim in exchange for 105% of the scheduled amount and becoming subject to the injunction preventing "the commencement or prosecution by any Person or Entity whether directly, derivatively, or otherwise, of any Causes of Action released pursuant to [the] Plan." Plan art. VIII.F. The Plan's ability to bind iCapital and Voelker is not premised on a holding that the relevant assets were or were not part of the bankruptcy estate; it is premised on iCapital agreeing to give up litigation of that question in return for 105% of the scheduled amount. Accordingly, even if Voelker's appeal were not equitably moot, the Court would affirm the bankruptcy court's holding on the merits on

the grounds that Voelker was enjoined from commencing the adversary proceeding. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 502–03 (2015); *In re Crowley*, 258 B.R. 587, 591 (Bankr. D. Vt. 2000).[4]

Appellee's motion to dismiss the appeal is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 23 and 26 and to close this case.

SO ORDERED.

Dated: June 23, 2025
      New York, New York

                                              LEWIS J. LIMAN
                                            United States District Judge

---

[4] Because the appeal is dismissed as equitably moot, the Court need not address the argument that Appellant lacks standing to seek the requested relief. *See* Dkt. No. 23 ¶¶ 47–50.